UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                            CASE NO. 01-CR-80527-DT
                            JUDGE VICTORIA A. ROBERTS
                            MAGISTRATE JUDGE PAUL KOMIVES

v.

STEVEN SIMMONS,

      Defendant.

_____/

## REPORT AND RECOMMENDATION REGARDING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE SEIZED IN VIOLATION OF DEFENDANT'S FOURTH AMENDMENT RIGHTS (Doc. Ent. 14)

Table of Contents

I.     RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.    REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A.     Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    B.     The Fourth Amendment and Search Warrant Exceptions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    C.     Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
         1.     The facts as set forth in the motion and response are largely undisputed. . . . . . . . . . . . 5
         2.     There are no material facts in dispute; therefore, the Court should deny defendant's
             request for an evidentiary hearing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
         3.     The officers had reasonable suspicion to stop defendant. . . . . . . . . . . . . . . . . . . . . . 12
         4.     The officers' use of handcuffs and detention of defendant was consistent with *Terry*.
             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
         **5.**     **The Court may assume that defendant did not consent to the search.** . . . . . . . . . 21
         6.     The shotgun, ammunition and crack pipe should not be suppressed on the basis that
             defendant's Fourth Amendment rights were violated. . . . . . . . . . . . . . . . . . . . . . . . 22

III.   NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

I.      **RECOMMENDATION:** The Court should deny defendant's motion to suppress evidence seized in violation of defendant's fourth amendment rights.  (Doc. Ent. 14). Specifically, the Court should deny defendant's request for an evidentiary hearing and should not order suppressed "all evidence and statements seized from [d]efendant on November 11, 2000." Mtn. at 1.

II.     **REPORT:**

A.      **Procedural History**

Defendant has two prior felony convictions.  Mtn. Br. at 1.  This case arises from the November 11, 2000 apprehension and arrest of defendant by the Detroit Police Department. Mtn. at ¶¶ 2-7.  On June 14, 2001, defendant was indicted on one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(e) and one count of possession of an unregistered firearm in violation of 26 U.S.C. §§ 5861(d), 5845(a)(4).  (Doc. Ent. 1).[1]

On August 8, 2001, defendant filed a motion to suppress evidence seized in violation of his fourth amendment rights.  (Doc. Ent. 14 [Mtn.]).  He requests that the Court "conduct an evidentiary hearing and enter an order suppressing all evidence and statements seized from [d]efendant on November 11, 2000."  Mtn. at 1.  Defendant argues that (1) "the officers lacked reasonable suspicion to stop defendant[,]" (2) "the police did not have probable cause to detain the defendant[,]" (3) "defendant did not voluntarily consent to the search of his person[,]" and

---

[1]The Criminal Case Cover Sheet shows that the indictment was based upon the prior complaint of case number 00-CR-81066.  In Case No. 00-CR-81066, plaintiff was charged with felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1).  His initial appearance took place on December 14, 2000 and a $10,000 unsecured bond was entered.  However, on December 28, 2000, the complaint was dismissed without prejudice and the bond was cancelled.

(4) "the evidence and statements seized from defendant must be suppressed as the fruits of an illegal search and seizure."  Mtn. Br. at 2, 4, 5, and 6.[2]

The government filed a response to defendant's motion on August 27, 2001.  (Doc. Ent. 19 [Rsp.]).  Plaintiff argues that (1) "[p]olice officers may properly stop and investigate an individual who breaks into unprovoked, headlong flight immediately upon noticing the officers watching him engage in suspicious conduct[;]" and (2) "[t]he facts justifying the stop of an individual actively attempting to flee the police and reasonably suspected of possessing a concealed weapon, also justify a non-consensual "*Terry*" pat-down search of that individual for weapons."  Rsp. at 2, 5.

On July 18, 2005, my clerk set the hearing on this motion for August 15, 2005.  (Doc. Ent. 36).  The hearing was rescheduled to September 12 or 13, 2005.  It was again rescheduled for September 28, 2005.

On September 26, 2005, the government filed a supplemental response to the motion to suppress.  (Doc. Ent. 41 [Supp. Rsp.]).  It is the government's position that "the defendant has failed to allege any contested facts.  Therefore, a hearing to develop a factual basis upon which to decide the defendant's motion is unnecessary.  Consequently, defendant's motion to suppress should be denied."  Supp. Rsp. at 1.

The hearing on the motion to suppress was tentatively rescheduled for October 5, 2005. However, on October 4, 2005, my clerk noticed the hearing on the instant motion for October 14, 2005.  (Doc. Ent. 42).

---

[2]On August 10, 2001, Judge Roberts entered an order referring defendant's motion to suppress to me for report and recommendation.  (Doc. Ent. 16).

On October 14, 2005, I heard oral argument regarding the instant motion.  Present at the hearing were defendant; his counsel, attorney John L. Belanger;[3] and Assistant United States Attorney John Freeman.

**B.     The Fourth Amendment and Search Warrant Exceptions**

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. CONST. amend. IV.

"The Fourth Amendment protects people, not places."  *Katz v. United States*, 389 U.S. 347, 351 (1967).  "What a person knowingly exposes to the public, even in this own home or office, is not a subject of Fourth Amendment protection.  But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected."  *Id.*  (internal and external citations omitted).

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions."  *Katz*, 389 U.S. at 357 (internal and external footnotes omitted).  "A well-established exception to the usual requirement of a search warrant as a prerequisite to a search is where the search is incident to a valid arrest."  3A Charles Alan Wright, Nancy J. King, Susan R. Klein & Sarah N. Welling, *Federal Practice and*

---

[3]On the day of the hearing, defense counsel filed a motion to withdraw as counsel for the defendant.  (Doc. Ent. 43).  On October 18, 2005, Judge Roberts entered an order granting the motion to withdraw.  (Doc. Ent. 44).

*Procedure* § 667 (3rd ed. 2004).  Also, search warrant exceptions "include the seizure of items

found in plain view, searches conducted at the border and its functional equivalent,

administrative and special needs searches, exigent circumstances, the automobile exception, and

the 'stop and frisk' doctrine."  3A Charles Alan Wright, Nancy J. King, Susan R. Klein & Sarah

N. Welling, *Federal Practice and Procedure* § 668 (3rd ed. 2004) (footnotes omitted).

Additionally, "[a] search without a warrant is allowed if there is a voluntary consent to the

search."  *Id*. § 669.

**C.      Analysis**

**1.      The facts as set forth in the motion and response are largely undisputed.**

On November 11, 2000, Detroit Police Officers Gentry Shelby and Jerry Jones observed

defendant near East Forest and Crane streets in Detroit.  Mtn. ¶¶ 2-3; Mtn. Br. at 1; Rsp. Br. at 1.

Defendant claims he was riding his bike.  Mtn. ¶ 3; Mtn. Br. at 1.  The government contends that

this occurred at approximately 8:45 p.m. and that the area of East Forest and Crane streets is "an

area known for heavy narcotics trafficking".  Rsp. Br. at 1.

According to the government, the officers "observed defendant . . . facing their direction

and moving his hand inside his coat in the mid-waist area in a manner which made it appear that

he was armed."  Rsp. at 1.  According to defendant, "[t]he officers in the car claim that

[defendant] was moving his hands around in his waistband area, as if he had a firearm on his

person.  However, the officers did not actually observe the [d]efendant with a firearm."  Mtn. Br.

at 1; *see also* Mtn. ¶ 4.

Plaintiff made eye contact with the officers as the police car neared.  Mtn. Br. at 1.

Defendant rode his bike away and down an alley.  Mtn. ¶ 5; Mtn. Br. at 1; Rsp. Br. at 1.

According to defendant, "[t]he police followed him into an alley."  Mtn. at ¶ 5; *see also* Mtn. Br. at 1.  Officer Shelby chased defendant on foot.  Mtn. at ¶ 5, Mtn. Br. at 1, Rsp. Br. at 1.  According to defendant, Officer Jones "followed in his squad car."  Mtn. at ¶ 5; Mtn. Br. at 1.  Defendant crashed into some debris and fell off of the bike.  Mtn. Br. at 1, Rsp. Br. at 1; *see also* Mtn. at ¶ 6.

The government contends that, "defendant got up and attempted to run, but was stopped by Officer Shelby and placed in handcuffs."  Rsp. Br. at 1.  Defendant claims he was handcuffed immediately after his fall.  Mtn. Br. at 1; *see also* Mtn. at ¶ 6.

The government also contends that, "Officer Shelby then conducted a pat down search of defendant for officer safety[.]" Rsp. Br. at 1.  Defendant notes that the officers claimed the pat down search by Officer Shelby was for safety reasons.  Mtn. Br. at 1.

As a result of the search, Officer Shelby found "a loaded, sawed-off shotgun in the mid-waist area of defendant's clothing," as well as "three rounds of live 20-gauge ammunition and a three inch crack pipe recovered from defendant's right front pants pocket."  Rsp. Br. at 1.  According to defendant, Officer Shelby found a loaded short-barreled shotgun near defendant's waist, as well as three live 20-gauge rounds of ammunition in defendant's right front pants pocket.  Mtn. Br. at 1; *see also* Mtn. at ¶ 7.  According to defendant, "[t]he firearm is 21 inches in overall length with a barrel length of 12 3/4 inches."  Mtn. Br. at 1.

**2.      There are no material facts in dispute; therefore, the Court should deny defendant's request for an evidentiary hearing.**

**a.      Parties' arguments**

As previously noted, plaintiff requests that the Court "conduct an evidentiary hearing and enter an order suppressing all evidence and statements seized from [d]efendant on November 11,

6

2000." Mtn. at 1. In its August 27, 2001 response, the government argued that defendant's grounds for suppression "relate to the uncontested facts and circumstances of the current case and, thus, are inadequate to justify the suppression sought." Rsp. at 1. Although the government did not argue that an evidentiary hearing was unnecessary,[4] the phrase "uncontested facts" appears in the response brief at pages 2 and 5; the phrase "undisputed facts" appears in the response brief at page 3; the phrase "the agreed upon totality of circumstances presented" appears at page 5; and the phrase "agreed upon facts" appears at page 5.

According to the government, it filed its September 26, 2005 supplemental response "in order to amplify its original position on defendant's motion." Supp. Rsp. at 1. With reference to the August 27, 2001 response, the government argues that "the defendant has failed to allege any contested facts. Therefore, a hearing to develop a factual basis upon which to decide the defendant's motion is unnecessary. Consequently, defendant's motion to suppress should be denied." Supp. Rsp. at 1.

**b.    Applicable law**

The cases cited by the government in its supplemental response are persuasive. "[A] criminal defendant is not entitled, as a matter of right, to an evidentiary hearing on every motion that he deigns to file." *United States v. Staula*, 80 F.3d 596, 603 (1st Cir. 1996). "A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record." *Staula*, 80 F.3d at 603. "Most importantly, the defendant must show that there are factual disputes which, if

---

[4]The government's original response mentions "arguments and authorities this Court permits to be presented at the hearing for this matter[.]" Rsp. at 1-2.

resolved in his favor, would entitle him to the requested relief." *Id.  See also United States v. Lilly,* 983 F.2d 300, 310 (1st Cir. 1992) ("the movant must make an adequate threshold showing that material facts are in genuine doubt or dispute."); *United States v. Sophie*, 900 F.2d 1064, 1071 (7th Cir. 1990) ("An evidentiary hearing is necessary only if the party requesting the hearing raises a significant, disputed factual issue.").

"In particular, evidentiary hearings on motions to suppress are required only when a defendant makes a sufficient showing that an illegal search has occurred.[5]  To make this showing the defendant must allege facts, sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented." *United States v. Laureano Velez*, 210 F.Supp.2d 54, 56 (D. Puerto Rico 2002) (internal citations and quotations omitted).  "General or conclusory assertions will not suffice." *United States v. Teasley*, No. Crim. A. 96-50, 1996 WL 117513, *1 (E.D.La. 1996) (citing *United States v. Harrelson*, 705 F.2d 733, 737 (5th Cir. 1983)).

"'Irrespective of the underlying burdens on the merits of Defendant's motions, Defendant bears the burden of showing disputed, material facts sufficient to merit an evidentiary hearing.'" *Laureano Velez*, 210 F.Supp.2d at 56 (citing *United States of America v. Council*, No. CRIM. A. 97-375, 1998 WL 132766 (E.D.La.1998)).  "As in all requests for dismissal of the indictment or suppression of the evidence, the defendant must first allege facts demonstrating that a hearing on the suppression issue is warranted and then at the hearing must produce evidence that he or she

---

[5]*See also United States v. Calderon*, 77 F.3d 6, 9 (1st Cir. 1996) ("Evidentiary hearings on motions to suppress are required only where a defendant makes a sufficient showing that the evidence seized was the product of a warrantless search that does not fall within any exception to the warrant requirement.") (citing *United States v. Lewis*, 40 F.3d 1325, 1332 (1st Cir. 1994)).

8

is entitled to the relief sought." *United States v. Utecht*, 238 F.3d 882, 887 (7th Cir. 2001) ("

Utecht bears the burden of making a prima facie showing before the district court must hold a

hearing to investigate whether the IRS abused its civil summons power."). "A defendant must

present specific, detailed, and material facts in order to carry this burden." *Utecht*, 238 F.3d at

887.

"[A] 'district court [i]s obliged to hold a hearing only if the difference in facts is material,

that is, only if the disputed fact makes a difference in the outcome.'" *United States v. Villegas*,

388 F.3d 317, 324 (7th Cir. 2004) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th

Cir.1991)). "Because the purpose of an evidentiary hearing is to resolve material factual

disputes among the parties, a hearing is not required in the absence of such disputes." *Villegas*,

388 F.3d at 324.

**c.     Conclusion**

There are a few differences in the factual histories supplied by the parties. For example,

although the government contends that the area of East Forest and Crane Streets is "an area

known for heavy narcotics trafficking", Rsp. Br. at 1, defendant does not concede this point,

Mtn. Br. at 1. Furthermore, although he acknowledges the government's claim about the furtive

movement, defendant does not admit that he made such a movement near his waist and he

contends that the officers did not observe him with a firearm. Mtn. Br. at 1; *see also* Mtn. ¶ 4.

Additionally, while the government claims that defendant got up from his fall and attempted to

run, defendant claims he was handcuffed immediately after his fall. Rsp. Br. at 1; Mtn. Br. at 1;

*see also* Mtn. at ¶ 6. Also, defendant challenges the officers' purported motivation for the pat

down search.  Mtn. Br. at 1.  Moreover, defendant does not admit that the pat down search yielded a crack pipe.  Mtn. Br. at 1.

For the most part, the differences in the factual histories are not specific and detailed. For example, defendant might have completely denied that he made a furtive movement or might have explained in his own words the movement he allegedly made.  In fact, defendant's motion brief does not really challenge that the motion was made.  For example, the motion brief states: "The defendant had earlier merely made some movement around his waist and went in another direction of the police."  Mtn. Br. at 4.  Instead, defendant's factual differences are mainly challenges, such as a failure to concede or admit, to the government's version of events.  With regard to the dispute over when defendant was handcuffed (after he attempted to run or immediately after his fall), that difference is not material, as discussed in Section II.C.4 of this report.

Defense counsel touched on some of these differences at the October 14, 2004 motion hearing.  For example, he argued that there was a need for witness testimony regarding the motion defendant made and whether the incident at issue occurred in a high crime area.  He also thought there was a lack of information regarding the time of day the incident occurred, the lighting conditions, the distance between the officers and the defendant, notice to the defendant that these were police officers (i.e., lights on car, siren).  Additionally, he questioned the existence of a gun and the availability of witnesses.

Some of the questions raised by defense counsel at the motion hearing were addressed in the government's August 27, 2001 response.  For example, according to the government, the

incident took place at approximately 8:45 p.m. and "uniformed police officers Gentry Shelby and

Jerry Jones . . . were on routine patrol in a marked police car[.]" Rsp. Br. at 1.

It is true that the statements in the government's original response brief were not

substantiated by copies of police reports. However, even though the government did not attach a

copy or copies of the police reports in support of its response, it still remains that defendant has

not satisfied his burden to establish that there are material facts in dispute. This is something

that might have been accomplished by testimony. *Simmons v. United States*, 390 U.S. 377, 394

(1968) ("when a defendant testifies in support of a motion to suppress evidence on Fourth

Amendment grounds, his testimony may not thereafter be admitted against him at trial on the

issue of guilt unless he makes no objection."). It might also have been accomplished by

affidavits in support of the motion. *Calderon*, 77 F.3d at 9 ("But this is a supposition to which

Calderon gave no flesh when he had the opportunity on the motion to suppress. Calderon filed no

affidavits in support of the motion, not even from Delgado, on whose state of mind he now so

heavily relies. In contrast, the prosecution, in opposing the motion, provided copies of the police

reports which told a different story.") (internal footnote omitted); *United States v. Teasley*, No.

Crim. A. 96-50, 1996 WL 117513, *1 (E.D.La. 1996) ("Defendant's motions set forth no

specific facts that would enable this Court to conclude that a substantial claim is presented."

"Defendant does not even begin to describe the facts and circumstances surrounding the his

encounter with members of the Jefferson Parish Sheriff's Office. He provides no affidavit to

support his allegations regarding his state of mind or anything else. He does not provide a single

case citation to support his theory of illegality. There are no grounds for the Court to conclude

that a substantial claim is presented, let alone that defendant is entitled to prevail."). Although

11

defense counsel discussed the type of testimony he was seeking at an evidentiary hearing, his request for this type of testimony does not change the fact that defendant has not satisfied his burden to show a dispute of material fact which necessitates an evidentiary hearing.

Because there are no material facts in dispute, the Court should deny defendant's request for an evidentiary hearing.

**3.      The officers had reasonable suspicion to stop defendant.**

**a.      *Terry v. Ohio*, 392 U.S. 1 (1968)**

The "stop and frisk" exception to the search warrant requirement is commonly referred to as a "*Terry* stop". In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court considered "the role of the Fourth Amendment in the confrontation on the street between the citizen and the policeman investigating suspicious circumstances." *Terry*, 392 U.S. at 4. Specifically, the Court considered "whether it is always unreasonable for a policeman to seize a person and subject him to a limited search for weapons unless there is probable cause for an arrest." *Id*. at 14. The Court stated that "in determining whether the seizure and search were 'unreasonable' our inquiry is a dual one–whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Id*. at 19-20.

"[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). *See also Michigan v. Long*, 463 U.S. 1032, 1049 (1983) (referencing *Terry*, 392 U.S. at 21) (The search of defendant's person "is permissible if the police officer possesses a reasonable belief based on 'specific and articulable

facts which, taken together with the rational inferences from those facts, reasonably warrant' the officers in believing that the suspect is dangerous and the suspect may gain immediate control of weapons."); *United States v. Erwin*, 155 F.3d 818, 822 (6th Cir. 1998) ("'the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause.'") (citing *United States v. Sokolow*, 490 U.S. 1, 7 (1989)); *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir. 1996) (citing *Terry*, 392 U.S. at 21) ("A temporary detention for questioning does not require a showing of probable cause if it is justified by specific and articulable facts that give rise to a reasonable suspicion of criminal activity."); and *United States v. Bentley*, 29 F.3d 1073, 1075 (6th Cir. 1994) ("Under *Terry v. Ohio,* 392 U.S. 1[] (1968), where a law enforcement officer lacks probable cause, but possesses a reasonable and articulable suspicion that a person has been involved in criminal activity, he may detain the suspect briefly to investigate the suspicious circumstances.").

"'[T]he issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *Michigan v. Long*, 463 U.S. at 1050 (citing *Terry*, 392 U.S. at 27. In determining reasonable suspicion, "[t]he officer . . . must be able to articulate something more than an 'inchoate and unparticularized suspicion or 'hunch.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (citing *Terry*, 392 U.S. at 27). There must be a "'minimal level of objective justification' for making the stop." *Sokolow*, 490 U.S. at 7 (citing *Immigration and Naturalization Service v. Delgado*, 466 U.S. 210, 217 (1984); *United States v. Cortez*, 449 U.S. 411, 417-418 (1981) ("[T]he detaining officers must have a

particularized and objective basis for suspecting the particular person stopped of criminal activity.").

The level of suspicion required by the Fourth Amendment "is considerably less than proof of wrongdoing by a preponderance of the evidence." *Sokolow*, 490 U.S. at 7. "[T]he level of suspicion required for a *Terry* stop is obviously less demanding than that for probable cause[.]" *Sokolow*, 490 U.S. at 7. "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990) (citing *Adams v. Williams*, 407 U.S. 143 (1972)). *See also McPherson v. Kelsey*, 125 F.3d 989, 993 (6th Cir. 1997). The Court must "consider the totality of the circumstances when determining whether reasonable suspicion was present." *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir. 1996) (citing *United States v. Knox*, 839 F.2d 285, 289 (6th Cir. 1988), *cert. denied*, 490 U.S. 1019 (1989)).

In conclusion, the Supreme Court in *Terry* held that "where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer

14

clothing of such persons in an attempt to discover weapons which might be used to assault him."
*Terry v. Ohio*, 392 U.S. 1, 30 (1968).  "Such a search is a reasonable search under the Fourth
Amendment, and any weapons seized may properly be introduced in evidence against the person
from whom they were taken."  *Id.* at 31.

### b.    Parties' arguments

Defendant argues that "[t]he officers lacked reasonable suspicion to stop defendant[.]"
Mtn. Br. at 2-3.  Defendant claims that Officer Shelby's only reasons for stopping defendant and
arresting him immediately were defendant's furtive movement and defendant riding in another
direction upon seeking the officers.  Defendant argues that "the police did not have specific and
articulable facts to support the stop of the [d]efendant."  Defendant contends that "[i]f these
actions served as a basis for the stopping of all people riding their bikes down the street, the
police would spend most of their time occupied with stopping law-abiding citizens."
Furthermore, defendant contends, "[m]ost valid stops occur in the course of the issuance of
traffic citations."  Mtn. Br. at 3.  According to defendant, he did not commit a traffic violation
when he was stopped, and "[t]he officers were merely reacting to a suspicious movement."
*United States v. McFadden*, 238 F.3d 198, 204 (2d Cir. 2001): ("the officers had sufficient
grounds to believe that McFadden was committing a traffic infraction when they observed him
riding his bicycle on the sidewalk." "the search in this case was a lawful search incident to a
proper seizure.").  Defendant concludes that "[t]his search was not based on the officer's
reasonable articulable facts, but rather a mere hunch[,]" and the seized evidence should be
suppressed.  Mtn. Br. at 3.

15

The government argues that "[p]olice officers may properly stop and investigate an individual who breaks into unprovoked, headlong flight immediately upon noticing the officers watching him engage in suspicious conduct." Rsp. Br. at 2-5. The government claims that the undisputed furtive movement and attempt to ride away upon seeing the officers alone provide "a specific, articulable, objective basis for suspecting defendant of criminal activity[.]" Rsp. Br. at 3.

**c.     Conclusion**

The Court should find *Illinois v. Wardlow*, 528 U.S. 119 (2000), a case upon which the government relies, persuasive. Therein, the Court stated: "[I]t was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police." *Wardlow*, 528 U.S. at 124 (2000). "Our cases have also recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Wardlow*, 528 U.S. at 124 (citing cases). "Headlong flight--wherever it occurs-- is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Id*. "[T]he determination of reasonable suspicion must be based on commonsense judgments and inferences about human behavior." *Id*. at 125. The Court held that "the officers' stop did not violate the Fourth Amendment to the United States Constitution." *Id*. at 121.

As the government states, "it was not defendant's mere presence in an area of heavy narcotics trafficking that aroused the officers' suspicion. Rather, defendant drew the attention of police officers by first moving his hand in the area of his waistband as if he had a gun, and then immediately attempt[ed] to flee upon making eye contact with the officers." Rsp. Br. at 4. The

Court should agree with the government that "the consequent suspicion by Officer Shelby that defendant was involved in criminal activity was not only supported by defendant's unprovoked flight, but also by his observations of defendant's suspicious conduct just before defendant made eye contact and attempted to ride away."  Rsp. Br. at 4.

Therefore, the Court should conclude that the officers had reasonable suspicion to stop defendant.

**4.     The officers' use of handcuffs and detention of defendant was consistent with *Terry*.**

**a.     Parties' arguments**

Defendant argues that the police "did not have probable cause to handcuff and detain the [d]efendant[.]"  According to defendant, he was immediately seized when he was handcuffed; the officers did not obtain information to support probable cause for the arrest; and they did not ask questions to confirm suspicions they might have had.  "The officers arrested [defendant] before further investigation.  The brief investigation is supposed to occur before the detention takes place."  Arguing that the officers' "pat down of the [d]efendant was a plain violation of the [d]efendant's constitutional rights under the Fourth Amendment[,]" defendant contends that "any evidence seized must be suppressed."  Mtn. Br. at 4.

The government argues that "[t]he facts justifying the stop of an individual actively attempting to flee the police and reasonably suspected of possessing a concealed weapon, also justify a non-consensual "*Terry*" pat-down search of that individual for weapons."  Rsp. Br. at 5-6.  Defendant also argues that "the circumstances presented warranted handcuffing defendant, and the pat-down search for weapons which immediately followed was well supported by a reasonable, articulable belief that defendant was armed and presently dangerous."  Rsp. Br. at 6.

17

In support, the government states that "the police saw defendant moving his hands near his waist in a fashion specifically suggesting that he was armed, and then, immediately upon making eye contact, saw defendant attempt to flee." Furthermore, the government states, "the possibility that defendant might continue his attempt to flee while still possibly being armed justified placing him in handcuffs." Rsp. Br. at 6. According to the government, the "combination of flight and observed conduct also provided a reasonable, articulable basis not only for believing that defendant was armed, but dangerous to the police officers pursuing him and anyone else in the vicinity as well." Rsp. Br. at 6. Therefore, the government concludes, "the non-consensual handcuffing and pat-down search of defendant which followed his initial investigative stop by Officer Shelby was reasonable, justified and consistent with the standards set forth in *Terry v. Ohio*." Rsp. Br. at 6.

**b.    The use of handcuffs during a *Terry* stop**

In support of his argument that the officers did not have probable cause to detain him, defendant relies upon *Terry* and *United States v. Butler*, 223 F.3d 368 (6th Cir. 2000). Mtn. Br. at 4. "[U]nder *Terry*, when a police officer reasonably concludes that criminal activity may be afoot, the officer may briefly stop the suspicious person and make 'reasonable inquiries' aimed at confirming or dispelling his suspicions, and may conduct a patdown for weapons." *United States v. Butler*, 223 F.3d 368, 374 (6th Cir. 2000) (citing *Terry v. Ohio*, 392 U.S. 1, 30 (1968)). "In short, upon making the stop, 'the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions. But the detainee is not obligated to respond. And, unless the detainee's answers provide the officer with probable cause to arrest him, he must then be released.'" *Butler*,

223 F.3d at 374 (citing *Berkemer v. McCarty*, 468 U.S. 420, 439-40 (1984)) (footnotes omitted). "'When a detention rises to the level of a full-fledged arrest, ... the Fourth Amendment demands that the seizure be supported by probable cause.'" *Id.* (citing *Gardenhire v. Schubert*, 205 F.3d 303, 313 (6th Cir.2000)).

However, the government does not argue that it had probable cause to handcuff and detain defendant. Rather, the government maintains that the officers' use of handcuffs and detention of defendant was consistent with *Terry*. "When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm." *Terry v. Ohio*, 392 U.S. at 24.

The government's response mentions several cases which are instructive on the use of handcuffs in conjunction with a *Terry* stop. Rsp. at 5-6. "[T]he use of handcuffs [does not] exceed the bounds of a *Terry* stop, so long as the circumstances warrant that precaution." *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir. 1999). *See also United States v. Hurst*, 228 F.3d 751, 758 n.3 (6th Cir. 2000) ("under the circumstances, where defendant was reasonably suspected of having just burglarized a home and might reasonably have been deemed armed and dangerous, the officers' attempt to use handcuffs as a precautionary measure to secure their safety during the vehicle search was not unreasonable or otherwise improper.") (citing *Houston*, 228 F.3d at 814-815); *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir. 1993) ("Nine courts of appeals, including the Tenth Circuit, have determined that such intrusive precautionary measures [use of handcuffs or placing suspects on

the ground] do not necessarily turn a lawful *Terry* stop into an arrest under the Fourth

Amendment."); *United States v. Walker*, No. 94-3521, 1995 WL 141343, **5 (6th Cir. 1995)

("Case law permits the use of force, such as handcuffs and guns, to effect a stop when such a

show of force is reasonable under the circumstances of the stop."); *United States v. Monhollen*,

No. 97-5855, 1998 WL 152934, **2 (6th Cir. 1998) ("The officers' action in placing Monhollen

in handcuffs while they secured the area is precisely the conduct permitted by *Terry*.").

**c.    Conclusion**

Here, as previously noted, the government contends that "defendant got up and attempted

to run, but was stopped by Officer Shelby and placed in handcuffs." Rsp. Br. at 1. There is an

apparent dispute in that defendant claims he was handcuffed immediately after his fall. Mtn. Br.

at 1; *see also* Mtn. at ¶ 6. However, even if defendant did not get up and attempt to run but

instead was handcuffed immediately after his fall, the parties have each stated that defendant

rode his bike away from the police and down an alley and that Officer Shelby chased defendant

on foot. Mtn. ¶ 5; Mtn. Br. at 1; Rsp. Br. at 1. Therefore, defendant was in the process of biking

away from the police when he fell. Under these circumstances, it can fairly be said that the

precaution of handcuffing defendant was warranted, *Houston*, 174 F.3d at 815, because the

officer would not have been able to perform a pat down search if defendant was eluding a stop

by the police.

Additionally, it is worth noting that the parties do not dispute that the search occurred

after defendant was handcuffed. Rsp. Br. at 1; Mtn. Br. at 1. Under the circumstances of this

case, the fact that the search was not performed until after defendant was handcuffed is

consistent with the conclusion that the placement of handcuffs was a precaution to performing the search (rather than an arrest).

Therefore, the Court should conclude that the use of handcuffs and detention of defendant was consistent with *Terry*.

**5.       The Court may assume that defendant did not consent to the search.**

Defendant contends that he "did not voluntarily consent to the search of his person." Mtn. at 5.  According to defendant, "[h]e was immediately handcuffed without being questioned to determine if he was engaged in criminal activity[,]" and the officers did not seek defendant's consent to a search.  Mtn. at 5.

An officer may proceed with a warrantless search where he or she has been given voluntary consent to do so.  "[W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied."  *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973). "Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Id*. at 248-249.[6]

---

[6]Defendant does not contest the legality of the traffic stop.  Therefore, this report does not address the officer's motivation for the stop as an exception to the search warrant requirement.  *See Arkansas v. Sullivan*, 532 U.S. 769, 771-772 (2001) (citing *Whren v. United States*, 517 U.S. 806, 813 (1996) (*Whren* stands for an "'unwilling[ness] to entertain Fourth Amendment challenges based on the actual motivations of individual officers,' and held unanimously that '[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis.'").

21

The government's response does not contest this issue. Therefore, the Court may assume that defendant did not consent to the search.

**6.     The shotgun, ammunition and crack pipe should not be suppressed on the basis that defendant's Fourth Amendment rights were violated.**

Defendant contends that "the evidence and statements seized from defendant must be suppressed as the fruits of an illegal search and seizure." Defendant argues that "[t]he officers lacked reasonable suspicion of criminal activity unrelated to [d]efendant's actions sufficient to justify the search of [d]efendant." Mtn. Br. at 6. The government does not argue that fruits of an illegal search should be allowed at trial. Rather, the government contends that the search itself was not illegal and, therefore, the motion to suppress should be denied. Rsp. at 5-7.

"The exclusionary rule fashioned in *Weeks v. United States*, 232 U.S. 383[] (1914), and *Mapp v. Ohio*, 367 U.S. 643[] (1961), excludes from a criminal trial any evidence seized from the defendant in violation of his Fourth Amendment rights." *Alderman v. United States*, 394 U.S. 165, 171 (1969). In light of the foregoing conclusions that the officers had reasonable suspicion to stop defendant and that the handcuffing and detention of defendant was consistent with *Terry*, the Court should deny defendant's request for "an Order suppressing the handgun seized from the [d]efendant on November 11, 2000." Mtn. Br. at 6.

## III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of Health & Human Services*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sullivan*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 10/26/05

---

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record by electronic means or U.S. Mail on October 26, 2005.

s/Eddrey Butts
Case Manager

---